**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiff objects to Defendant's motion for protective order. The grounds for this objection are set forth in the accompanying memorandum.

AKHIL C. GUPTA,
By his attorney,

John D. Deacon, Jr. (#2216)
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

**CERTIFICATION**

I hereby certify that on this 6 day of June, 2005, I caused to be mailed, by First Class mail, postage prepaid, a copy of the within Objection to Attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.

O:\John D\AKHIL GUPTA\obj to defendant's motion for protective order 6-6-5.doc

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

AKHIL C. GUPTA, :
Plaintiff, :
:
v. : C.A. No. 03-587 S
:
CUSTOMERLINX CORPORATION, :
Defendant. :

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiff submits this memorandum in opposition to Defendant's motion for a protective order regarding plaintiff's post-trial subpoenas to nonparties. Plaintiff issued these subpoenas for documents, attempting to discover identity of accounts receivable (for purposes of garnishment) which information defendant has persistently refused to disclose.

Initially, Defendant's motion violates Local Rule 12(a) and should not have been accepted for filing. Defendant's motion was not accompanied by the required "separate memorandum of law containing the authorities and reasoning supporting [its] position."

However, even if Defendant is allowed to file this motion in violation of Local Rule 12, Defendant's motion has no basis whatsoever in law. The only law cited by Defendant is Rule 45(b) Fed. R. Civ. Proc., which provides in relevant part as follows:

> "Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party . . . ."

The subpoenas in question were issued after trial, and commanded production of documents after trial. Therefore, Rule 45(b) does not require that prior notice of the subpoenas be given to the opposing party.

Regarding the question of subsequent notice of post-trial subpoenas for documents, Defendant's motion does not address the point, nor does Rule 45 nor any other Rule of Civil Procedure address the point. Plaintiff denies any obligation to give Defendant subsequent notice of post-trial subpoenas for documents, especially where defendant is violating discovery obligations to provide the information itself. However, without admitting any obligation, such subsequent notice was in fact given to Defendant's counsel regarding subpoenas served, together with any and all documents and information produced in response to such subpoenas.

Defendant argues that Plaintiff is not entitled to the requested information, and that the post-judgment discovery is harassing and prejudicial. These arguments are totally baseless and frivolous.

The jury returned the verdict for plaintiff on April 28, and a judgment was entered on May 6. With prejudgment interest and costs, the total amount of the judgment at present exceeds $349,000. Unless plaintiff accomplishes attachment on trustee process in the near future, it is likely that the plaintiff will collect nothing on this judgment, and the time and effort invested in the case will have been wasted.

In Federal Court, pursuant to Rule 62(a) Fed. R. Civ. Proc., judgments are automatically stayed only for a period of 10 days after entry. Upon expiration of this 10-day period, execution will issue. Id. In Federal Courts, post-trial motions such as motion for new trial and/or for judgment as a matter of law do not stay execution of judgment; such post-trial motions merely suspend the running of the period for appeal.

Rule 69(a) Fed. R. Civ. Proc. provides in relevant part:

> "The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which

> the district court is held....In aid of the judgment or execution, the judgment creditor . . . **<u>may obtain discovery from any person,</u>** including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."

The clerk will issue a writ of execution, but that is not the type of post-judgment writ which is immediately needed by the plaintiff. The plaintiff here needs immediate issuance of a postjudgment writ of trustee process (Rhode Island's term for garnishment), which is in aid of judgment and execution.

The relevant practice and procedure in Rhode Island regarding attachment and trustee process subsequent to judgment is set forth in Rule 69(e) of the Superior Court Rules of Civil Procedure, and the identical Rule 69(e) of the District Court Civil Rules. Rhode Island Rule 69(e) provides that after a plaintiff's claim has been reduced to judgment, a writ of trustee process may issue, and the defendant's assets may be subjected thereto. In cases of a corporate or business entity judgment debtor, the requirement which applies in cases of human defendants for a post-service opportunity for a subsequent early hearing is not applicable. See <u>Dionne v. Bouley</u>, 757 F.2d 1344 (1st Cir. 1985), and the explanatory notes to R.I. Rules 69.

Under R.I. Rule 69(e)(2), a copy of the writ is not required to be served upon the defendant until <u>after</u> the writ is served on the trustees (i.e. garnishees).

Customerlinx' financial condition is rapidly declining. It appears that bankruptcy or some other type of insolvency proceeding, or private liquidation by controlling insiders, is likely. Approximately 65% of Customerlinx' most recent annual revenues came from the Kelly/RCA Contract (which was sold by the plaintiff in 2002, and which was the subject of one of the claims in the action). According to discovery recently obtained from Kelly post-trial, Kelly issued notices of termination of the Kelly/RCA Contract to Customerlinx dated October 21, 2004 and

December 21, 2004, by reason of Customerlinx' material breaches and defaults in performance. In addition, Kelly claims that Customerlinx owes Kelly approximately $2.6 million in over-billings by Customerlinx from March of 2003 through December 2004 and continuing monthly thereafter. According to Kelly (¶ 9 of Kelly's arbitration claim against Customerlinx), Customerlinx' over-billings resulted from Customerlinx' claim "that it was experiencing severe financial difficulties that were threatening to cause Customerlinx to close its operations facility." These claims are presently being litigated between Kelly and Customerlinx in arbitration.

In 2002, Customerlinx' annual revenues from customers other than Kelly/RCA were in excess of $15 million. At present, for the current year, Customerlinx' annual revenues from customers other than Kelly/RCA are projected by Customerlinx to be about $4 million, and the reliability of these projections cannot be confirmed. Customerlinx' financial viability is almost entirely dependant upon one customer, Kelly/RCA, and that customer has terminated its contract and is suing Customerlinx for $2.6 million.

It appears likely that plaintiff's only chance of collecting anything on account of the judgment is to immediately issue a writ of trustee process to customers who owe accounts payable, and to any banks in which Customerlinx has accounts. **However, that process requires identification of such customers who owe accounts payable, and identification of banks and bank accounts.** Since the conclusion of the trial, plaintiff has been diligently attempting to obtain from Customerlinx through discovery information identifying customer accounts receivable and bank accounts for purposes of attachment by trustee process. Customerlinx has wrongfully obstructed and thwarted all attempts to obtain this information, including by groundless objections, continuation of a pattern of falsely backdating certificates of service, and disobedience of a court order for production.

Customerlinx' present motion for protective order against subpoenas is simply another instance in its pattern of improper and groundless obstruction of plaintiff's attempts to obtain critically important information which plaintiff is entitled to receive. This motion should be denied, and the costs of opposing it should be assessed against defendant.

Respectfully submitted,

AKHIL C. GUPTA,
By his attorney,

John D. Deacon, Jr. (#2226)
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

**CERTIFICATION**

I hereby certify that on this 6 day of June, 2005, I caused to be served by via first class U.S. mail a copy of the within Memorandum in Opposition to Defendant's Motion for Protective Order to attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.