**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**PLAINTIFF'S NOTICE OF TYPOGRAPHICAL ERRORS**
**IN MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR NEW TRIAL**

In plaintiff's memorandum in opposition to defendant's motion for new trial, there are typographical errors on pages 6-7, as set forth on the attached copies.

AKHIL C. GUPTA,
By his attorney,

John D. Deacon, Jr. (#2226)
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

**CERTIFICATION**

I hereby certify that on this 7 day of June, 2005, I caused to be mailed by via first class U.S. mail a copy of the within Emergency Motion to Shorten time for Discovery Responses and for Hearing to attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.

demonstration basis, substantially impaired Customerlinx' ability to retain customers and grow. For example, Customerlinx lost most of its business from its two largest customers in the first half of 2001.

McDermott admitted that, as of the date of termination of his employment with Customerlinx in December ~~2001~~ 2002, it still did not have a multi-mode technology platform in place.

5. **Orders already in hand in December 2000 achieved Customerlinx' year 2001 targets for revenue and profitability, even without addition of any new customers.**

Mr. Gupta's testimony on these points was uncontradicted at trial. Defendant's motion for new trial does not address these points. The truth was that Customerlinx did not have such orders, but merely expressions of interest which never materialized into orders or sales.

The result of all the misrepresentations by McDermott painted an overall picture of Customerlinx as successful, growing, financially solid, technologically advanced, and thereby providing a very high likelihood of Mr. Gupta receiving the full bonus compensation provided by his written contract. However, the truth was that Customerlinx was a failing, money-losing, turnaround situation, unable to surmount the financial and technical obstacles to implementing the multi-mode technology platform that was its key selling point. Customerlinx' Board had effectively vetoed the implementation of any bonus plan or the payment of any bonuses. The truth was that, contrary to the picture painted by the misrepresentations, there was effectively zero likelihood of Mr. Gupta receiving any of the bonus compensation provided by his contract.

The applicable measure of damages on the misrepresentation claim was the "benefit of the bargain," as instructed by the Court at p. 53 of the Jury Instructions. This "measure protects the plaintiff's expectancy interest, giving the plaintiff the benefit of what was promised. The plaintiff is allowed to recover the difference between the actual value of what he has received

[which in regard to bonus compensation was zero] and the value it would have had if it had been as represented." Id.

As instructed by the Court at p. 52, plaintiff was not required to establish the loss or the amount of the loss with certainty. Plaintiff was merely required to provide some rational model of how the loss occurred and on what basis it has been computed. That requirement was clearly satisfied here.

The jury's verdict reflects a finding that, if the situation at Customerlinx had been as represented to Gupta, then more probably than not he would have earned the year 2001 bonus of $125,000 as provided by the written contract. The jury probably concluded that, by the end of 2001, Mr. Gupta knew or should have known that many of the representations were untrue, and by 2002 he was no longer reasonably relying upon belief in the truth of these representations. The jury's verdict is clearly supported by substantial evidence.

**1b. The Jury Verdict On Plaintiff's Fraud Claim For Sales Commissions Was Supported by Substantial Evidence.**

Plaintiff presented four separate legal theories for recovery of sales commissions:
express written agreement;
express oral agreement; implied-in-fact agreement; and quasi-contract, i.e., implied-in-law agreement. Plaintiff only needed to prevail on any one of these theories to be entitled to sales commissions. However, each of the four theories is supported by substantial evidence.

Contrary to defendant's argument, there was substantial evidence of an express written agreement entitling plaintiff to commissions on the RCA sale. This was the email sent by McDermott in the Fall of 2001, stating that sales commissions would be paid to any employee who made a sale, without excluding or excepting officers. Although Customerlinx failed to produce this document in discovery, and such improper withholding prevented the document