UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AKHIL C. GUPTA,
Plaintiff
v.
CUSTOMERLINX
CORPORATION,
Defendants

C.A. No. 2003-0587 S

**DEFENDANT CUSTOMERLINX' OBJECTION TO PLAINTIFF'S EMERGENCY MOTIONS TO SHORTEN TIME FOR DISCOVERY RESPONSES**

Now comes the defendant and objects to plaintiff's motion to shorten time for discovery responses.

As grounds for this motion, the defendant offers the attached memorandum.

Counsel for Defendant

Michael T. Farley #6196
Morrison Mahoney LLP
121 South Main Street
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420

**CERTIFICATION**

I hereby certify that on this 10th day of June, 2005, I caused to be served by First Class U.S. Mail, postage prepaid, a copy of the within document to:

John D. Deacon, Jr. #2226
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

______________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AKHIL C. GUPTA,
Plaintiff
v.
CUSTOMERLINX
CORPORATION,
Defendants

C.A. No. 2003-0587 S

**MEMORANDUM IN SUPPORT OF DEFENDANT CUSTOMERLINX' OBJECTION TO PLAINTIFF'S MOTIONS TO SHORTEN TIME FOR DISCOVERY RESPONSES**

Now comes the defendant Customerlinx and opposes plaintiff's motion. At the outset, defendant notes that plaintiff has not made the required "good faith effort" to resolve the dispute before involving the court.

Plaintiff recently served the following post-judgment discovery requests upon defendant:

Plaintiff's Fourth Request for Production of Documents[1]
Plaintiff's Fifth Request for Production of Documents
Plaintiff's Sixth Request for Production of Documents
Plaintiff's First Set of Interrogatories
Plaintiff's Second Set of Interrogatories

Plaintiff's counsel now seeks to hasten the time in which the responses to four of these discovery requests are due, and seeks to impose certain obligations upon the defendant and upon the court.

Specifically, plaintiff asks this court to order that defendant's counsel make its objections to the aforementioned discovery requests on a single day's notice. Moreover, the plaintiff asks the court to order that defendant's counsel prepare a response to a hypothetical motion to compel on a single day's notice. Moreover, the plaintiff's asks the court to order itself to hold a

[1] At a hearing before Judge Lovegreen on June 8, 2005 on Defendant's Fourth Motion to Quash the deposition of Customerlinx , defendant was ordered to appear for a deposition by telephone, unless it provides responses to one of the requests contained in plaintiff's Fourth Request for Production of Documents. Counsel for the defendant expects to produce responsive documents on Monday, June 13, 2005.

discovery hearing on 3 days notice (for the hypothetical motion to compel). Moreover, the plaintiff asks the court to assume that the defendant's hypothetical objections will be overruled, and that the hypothetical motion to compel will be granted and that defendant must prepare his discovery responses within three days thereafter. Finally, the plaintiff asks that the order be made "expressly binding" upon certain named individuals at Customerlinx, "so that any violation may be remediable by contempt and personal liability."

Plaintiff's counsel offers no authority for this unusual request, which would seem to circumvent Local Rule 13(d) requiring counsel to confer in a good faith effort to resolve discovery disputes before seeking the involvement of the court. By this motion, the plaintiff is actually seeking the court's involvement in discovery disputes which have not even materialized!

Finally, counsel for the plaintiff has made numerous unsupported statements about the financial condition of Customerlinx. These unsupported allegation ought not serve as the basis for any order, particularly one as unusual as that which is requested by plaintiff's counsel. Attached is a second Affidavit of Neil Quarterman, which disputes the most recent unsupported claims.

For the foregoing reasons, we respectfully request that the court deny plaintiff's motion to shorten time.

Counsel for Defendant

Michael T. Farley, #6196
Morrison Mahoney LLP
121 South Main Street
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AKHIL C. GUPTA,
Plaintiff
v.
CUSTOMERLINX
CORPORATION,
Defendants

C.A. No. 2003-0587 S

**AFFIDAVIT OF NEIL QUARTERMAN**

I, Neil Quarterman, do upon my oath depose and say the following.

1.) I am Chief Financial Officer of CustomerLinx Corporation. My office is at the company's corporate headquarters in Atlanta, GA.

2.) Contrary to the unsupported counterclaims made by Mr. Deacon in his letter to Judge Smith dated June 9, CustomerLinx' financial condition is in good shape. CustomerLinx has no debt financing at present; no bank accounts are entailed by banks, and there are no bank liens on bank accounts or properties. We are not, as Mr. Deacon claims, "leveraged to the hilt." Although interest rates have been favorable, CustomerLinx has in the past secured additional needed capital in the form of additional paid in capital from its majority owners, 5 Paces Ventures, LLP. CustomerLinx prefers to fund its operations from its own cash receipts; the last infusion of outside capital was on December 21, 2004, and with the exception of judgment in this case, no additional cash from 5 Paces Ventures, LLP had been anticipated.

3.) CustomerLinx has always intended to meet its obligations in the matter of Gupta vs. CustomerLinx Corporation when required, although, preferably, after post-trial motions and appeals (if any) have been resolved. To this end, 5 Paces Ventures, LLP has stated its intention to establish an escrow account of $350,000.00 when it has completed a capital call from its limited partners. To the best of my knowledge, this should be completed within three weeks, at

which point the account will be funded and placed under whatever management would suit the needs of the Court. This course would permit CustomerLinx to conduct its normal course of business and meet its payroll.

4.) To further reply to the statements made in paragraph 2 of Mr. Deacon's letter referenced above, CustomerLinx has approximately $150,000.00 in its various bank accounts as of the writing (10:00 PM on the evening of June 9, 2005).

5.) In reference to Deacon's statements in Paragraph 3 of the above-referenced letter, the latest forecast for the year 2005 anticipates annual revenue of $14.5 million – a year-over-year revenue increase of 31.6%. Mr. Deacon, in his calculations, merely annualizes the first quarter's results, which fails to take into account both the seasonal nature of CustomerLinx' business (the fourth quarter is usually the strongest) and the fact that CustomerLinx is adding new sales. CustomerLinx only added a sales team in October of 2004; we are now beginning to see the benefits of these efforts.[*]

6) CustomerLinx has submitted into evidence income statements from 2004, as well as well as its income statement/plan for 2005. Mr. Deacon's characterization of these financial statements as "hearsay" is mystifying. I can not speak from personal knowledge as to events prior to the fall of 2003, but losses since that time, as noted above, have been borne by the owners of the company. (It is my understanding that such was the case in the period 2000-2002; as was demonstrated in trial, losses were covered by the investments in the company.) Rather than being "deeply in the red" (paragraph 4), CustomerLinx is, in fact, in a period of growth for the first time in years.

[*] The first quarter of 2004 was stronger than the fourth quarter of that year due to the loss of a large customer in March of that year. However, the net effect was beneficial, since the expense of servicing that customer was greater than the revenue generated. After this loss, we were able to close one of our locations and operate more efficiently.

7) Mr. Deacon alleges that I provided false information my statements as to Kelly's portion of CustomerLinx revenue. He is in error. As I understand the arrangement, under previous management, revenue from Kelly was recognized as being comprised of all monies received from Thompson (the end customer). After this revenue was booked, monies due Kelly (which I believe Kelly recognized as revenue on its own behalf) were passed through to Kelly – invariably leaving CustomerLinx at a loss on the transaction. The agreement between Kelly and CustomerLinx was revised in the summer of 2003, and since that time CustomerLinx has received a flat fee for its services under the agreement. These fees have varied, and have in fact been recently revised. I have no idea as to the source of Mr. Deacon's allegation that CustomerLinx bills Kelly $650,000 per month; I can say without hesitation that such claim is false. For the benefit of the court, I list the amounts that CustomerLinx has billed Kelly, as well as CustomerLinx' revenue and the percentage of revenue that Kelly comprises below. I am willing to provide the billing records from our systems to support this statement. I ask the Court to bear in mind that the numbers for May through December, 2005 are forecasts, and that the Kelly numbers for 2005 reflect preliminary recent negotiations between Kelly and CustomerLinx, discussed in paragraph 8 below.

| Month | KMS Revenue | Total Revenue | Kelly Portion | CLX Net Income |
|---|---|---|---|---|
| January 2004 | 112,500 | 1,044,139 | 10.77% | (306,113) |
| February 2004 | 112,500 | 954,739 | 11.78% | (239,552) |
| March 2004 | 112,500 | 910,361 | 12.36% | (140,187) |
| April 2004 | 112,500 | 859,829 | 13.08% | (113,560) |
| May 2004 | 112,500 | 884,726 | 12.72% | (75,972) |
| June 2004 | 112,500 | 915,214 | 12.29% | (74,951) |
| July 2004 | 112,500 | 865,006 | 13.01% | (71,032) |
| August 2004 | 112,500 | 951,296 | 11.83% | 11,163 |
| September 2004 | 112,500 | 861,635 | 13.06% | 228 |
| October 2004 | 112,500 | 883,029 | 12.74% | 3,486 |
| November 2004 | 112,500 | 924,144 | 12.17% | 37,199 |
| December 2004 | 112,500 | 922,967 | 12.19% | 42,259 |
| January 2005 | 75,000 | 901,909 | 8.32% | 66,018 |
| February 2005 | 75,000 | 845,332 | 8.87% | 21,415 |
| March 2005 | 75,000 | 801,882 | 9.35% | 2,761 |

| | | | | |
|---|---|---|---|---|
| April 2005 | 75,000 | 785,079 | 9.55% | 24,042 |
| May 2005 | 75,000 | 925,186 | 8.11% | 31,965 |
| June 2005 | 75,000 | 1,272,058 | 5.90% | 56,243 |
| July 2005 | 75,000 | 1,254,346 | 5.98% | 48,797 |
| August 2005 | 75,000 | 1,474,346 | 5.09% | 217,660 |
| September 2005 | 75,000 | 1,410,506 | 5.32% | 172,474 |
| October 2005 | 75,000 | 1,404,506 | 5.34% | 174,550 |
| November 2005 | 75,000 | 1,451,306 | 5.17% | 199,318 |
| December 2005 | 75,000 | 1,551,631 | 4.83% | 238,193 |
| Average percentage of revenue from KMS, 2004 | | | 12.30% | |
| Average percentage of revenue from KMS, 2005 | | | 6.39% | |

8) Recently, Kelly and CustomerLinx had a dispute about payments to CustomerLinx by Kelly. The parties were about to begin the arbitration process when, in the spirit of compromise, CustomerLinx' President met with Kelly's General Manager in an effort to resolve outstanding issues relating to their dispute. (At the time of our trial, Kelly was seeking to revert to the billing structure noted above that had been so disadvantageous to CustomerLinx – hence Mr. Deacon's allegations in paragraph 5 of his letter.) At the moment, the arbitration is stayed and CustomerLinx and Kelly are negotiating a revision to the existing agreement that would follow the general lines noted above. The settlement would require a restatement of CustomerLinx revenue along the lines noted above. CustomerLinx will provide a copy of the agreement to the Court once the terms are finalized. In the interim, I expect that Kelly would be willing to confirm the information I have provided.

9) Affiant takes the strongest possible exception to the prejudicial and combative language of Mr. Deacon's letter to the Court. CustomerLinx has all along sought to provide such information as it has been able to provide. To characterize my prior affidavit as "false" (twice), "hearsay" (twice), and intended to "deceive [the Court]" (in the last sentence of paragraph 8) is incorrect, deeply personally offensive, and seems intended to cast affiant as a perjurer. Such is not the case. Indeed, it would seem that Mr. Deacon makes these claims in almost willful

disregard for the truth. As we have stated above, CustomerLinx is prepared to honor the Court's final judgment. The only factor that would prevent us from so doing would be sanctions that would render CustomerLinx unable to transact business, such as an attachment of bank accounts (which would prevent us from paying our employees and our operating expenses) or our accounts receivable (which would deny us the funds to pay our operating expenses). Such actions would be willfully destructive, and would likely lead to the loss of more than a thousand jobs across the country. It seems a shame to do so much damage to so many people for no long-term tangible benefit.

SIGNED UNDER THE PENALTIES OF PERJURY THIS TENTH DAY OF JUNE, 2005.

Neil Quarterman

# CERTIFICATION

I hereby certify that on this 10 th day of June, 2005, I caused to be served by First Class U.S. Mail, postage prepaid, a copy of the within document to:

John D. Deacon, Jr. #2226
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195