**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTION IN AID OF ATTACHMENT ON TRUSTEE PROCESS, AND FOR AUTHORIZATION FOR RECORDING OF AMENDED JUDGMENT IN OTHER DISTRICTS**

Pursuant to Rule 65 Fed. R. Civ. Proc. plaintiff moves for a temporary restraining order and preliminary injunction in aid of attachment on trustee process. Plaintiff moves that defendant Customerlinx be temporarily and preliminarily restrained and enjoined from

(1) receiving, accepting, or negotiating any payments from specified customers,[1]

(i) Financial Times Ltd., and

(ii) the entities which are the customers on the "RCA Contract"---Kelly Services, Inc., Kelly Management Services, Inc. and Thomson Multimedia, Inc.; and/or

(2) drawing from, transferring, and/or withdrawing funds from any bank accounts,

until such time as there exists unconditional, undisputed obligation owed by solvent, identified obligors in the judgment amount of $349,000, plus an allowance for subsequently

---

[1] In addition, plaintiff requests that, when Customerlinx is compelled to obey the Court's order for identification of other customers and receivables, that any injunctive order under this motion be amendable to include such other identified customers and receivables.

accruing interest and costs during defendant's appeal, for a total of $385,000, such that effective trustee process can be, and is in fact, served upon said identified obligors.

In addition, the plaintiff moves pursuant to 28 U.S.C.A. § 1963 for an order authorizing the recording of the amended judgment in this action in any other district court.

The grounds for this motion are set forth in the accompanying memorandum and certification.

AKHIL C. GUPTA,
By his attorney,

John D. Deacon, Jr. (#2226)
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

**CERTIFICATION**

I hereby certify that on this 16 day of June, 2005, I caused to be served by via email delivery first class U.S. mail a copy of the within Emergency Motion for Temporary and Preliminary Injunction in Aid of Attachment on Trustee Process and for Authorization of Amended Judgment in Other Districts to attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTION IN AID OF ATTACHMENT ON TRUSTEE PROCESS, AND FOR AUTHORIZATION FOR RECORDING OF AMENDED JUDGMENT IN OTHER DISTRICTS**

Plaintiff has moved for a temporary restraining order and preliminary injunction in support of execution of judgment; more specifically in support of postjudgment writs of trustee process, or garnishment. In addition, plaintiff has moved under 28 USCA § 1963 for an order authorizing the recording of the amended judgment in this action in other districts.

## I. Temporary and Preliminary Injunction

The temporary and preliminary injunctive relief being requested in the present motion is a postjudgment limited freeze order as to certain of defendant's assets.

> "Once personal jurisdiction of a party obtained, the District Court has authority to order it to 'freeze' property under [that party's] control, whether the property be within or without the [district]." United States v. First Nat. City Bank, 379 U.S. 378, 384 (1965) (citing New Jersey v. New York City, 283 U.S. 473, 482 (1931).

See also 11A Wright-Miller-Kane, Federal Practice & Procedure, § 2945 (an injunction affecting the defendant's extraterritorial personal property will properly issue, although courts may be reluctant to issue an injunction affecting the defendant's extraterritorial real property); Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) (affirming order enjoining defendant from transferring or disposing of assets); Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d

151, 158 (1st Cir. 2004) ("federal courts possess general equitable power to issue prejudgment injunctions in the nature of freeze orders [in aid of] postjudgment remedies").

In Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986), the First Circuit affirmed a prejudgment preliminary injunction issued by the district court, freezing sufficient assets of the defendant to pay any judgment that might be obtained by the plaintiff, pending arbitration of the plaintiff's claims. The First Circuit held that the traditional four-part standard for preliminary injunction was properly applicable to that situation. In the present case, plaintiff requests the same type of relief, except in the postjudgment context.

In Grupo Mexicano v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), the Supreme Court held that, in cases where the claimed relief was exclusively money damages, federal courts lacked jurisdiction to issue prejudgment injunctive freeze orders. The Court reasoned that the scope of equity jurisdiction of the federal courts is defined by the scope of equity jurisdiction as it existed in 1789, at the time of adoption of the Constitution and the original Judiciary Act. As of 1789, the only analogous remedy available for freezing a debtor's assets was a "creditor's bill," but that remedy was not available prejudgment but rather available only to creditors who had obtained judgment.

Therefore, although the Supreme Court's Grupo Mexicano decision negates the applicability of Teradyne regarding prejudgment attachment in cases involving money damages, Teradyne remains viable authority for injunctive relief postjudgment in aid of legal process (as well as for prejudgment injunctive relief in actions seeking equitable remedies other than money damages). See Charlesbank Equity Fund, supra, 370 F.3d 151, 158-160. Thus, Teradyne remains applicable to the present motion for postjudgment injunctive relief, and Teradyne's traditional four-part test is applicable to the granting of the requested partial freeze order. Id.

The temporary and preliminary injunctive freeze order that plaintiff is requesting is as follows:

that defendant Customerlinx be temporarily and preliminarily restrained and enjoined from

(1) receiving, accepting, or negotiating any payments from specified customers,[1]

(i) Financial Times Ltd., and

(ii) the entities which are the customers on the "RCA Contract"---Kelly Services, Inc., Kelly Management Services, Inc. and Thomson Multimedia, Inc.; and/or

(2) drawing from, transferring, and/or withdrawing funds from any bank accounts,

until such time as there exists unconditional, undisputed obligation owed by solvent, identified obligors in the judgment amount of $349,000, plus an allowance for subsequently accruing interest and costs during defendant's appeal, for a total of $385,000, such that effective trustee process can be, and is in fact, served upon said identified obligors.

The potential problem confronted by plaintiff is explained as follows. Despite Customerlinx' refusal to respond to plaintiff's discovery requests for identification of customers and accounts receivable, we know through other means that one of Customerlinx' customers is Financial Times, a newspaper publisher which is headquartered in New York City. Financial Times does some business in Rhode Island, selling newspapers here, but it has not filed consent to service in Rhode Island. A writ of garnishment issued out of a Rhode Island court and served

[1] In addition, plaintiff requests that, when Customerlinx is compelled to obey the Court's order for identification of other customers and receivables, that any injunctive order under this motion be amendable to include such other identified customers and receivables.

on Financial Times under long-arm jurisdiction (§ 9-5-33 R.I.G.L.) might possibly be subject to jurisdictional objections. Similarly, with regard to the customers under the RCA Contract, although Kelly Services and Thomson Multimedia have filed consents to jurisdiction in Rhode Island, Kelly Management Services has not so filed, and the parties may contend that it is solely Kelly Management Services which owes any payment obligation to Customerlinx under the RCA Contract. Kelly Management Services might possibly not be subject to long-arm jurisdiction in Rhode Island, and so a writ of trustee process served to Kelly Management Services by mail under the long-arm statute might not be enforceable.

Any such jurisdictional questions could be avoided by registering the judgment in New York and Michigan, and having writs of garnishment issued out of the New York court to Financial Times, and out of the Michigan court to Kelly Management Services. However, the problem is that while the federal rules permit issuance of execution and trustee process in this district ten days after entry of the judgment (Rule 62(a) Fed. R. Civ. Proc.), the judgment cannot be recorded and executed in other districts until after the appeal period expires (unless the Court orders otherwise under 28 USCA § 1963, which is addressed below). Consequently, the defendant Customerlinx, by filing a notice of appeal, can potentially obstruct and delay the recording of the judgment in other districts which have clear jurisdiction over assets. The defendant in this action has not yet passed up any opportunity to obstruct and delay, so it seems likely that the defendant will appeal, despite the absence of any valid appealable issues.

Dismissing an appeal by defendant will take a year, after which plaintiff might be confronted with a situation in which writs of trustee process served to nonresident trustees are held unenforceable for lack of sufficient jurisdictional contacts. The defendant Customerlinx is in a financial tailspin, and in another year there is a substantial likelihood that the judgment

against it will not be collectible. In fact, it is questionable whether the judgment is collectible against Customerlinx at present. This prejudice to the plaintiff can only be remedied by issuance of the requested temporary and preliminary injunctive freeze order.

As held in Teradyne, 797 F.2d 43, 51-52, the four criteria for preliminary injunctive relief are as follows

> The court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. The decision to grant or deny a preliminary injunction is a matter for the discretion of the district court and is reversible only for an abuse of discretion.

As to #3, likelihood of success on the merits, this is established in the present case by the case having been fully tried on the merits and plaintiff having prevailed.

As to #4, granting the injunctive freeze order requested by plaintiff would not adversely affect any public interest. To the contrary, the public interest favors the payment of legal obligations.

As to #1, as held by the First Circuit in Teradyne, 797 F.2d at 52-53, a showing that a money judgment subsequently may not be collectible against the defendant is satisfactory for an injunctive freeze order regarding sufficient of defendant's assets to fully satisfy the judgment. In the present case, the financial decline of the defendant Customerlinx is detailed in the certification supporting this motion.

Customerlinx' sales/revenues have declined from $20.2 million in 2003 to $10.7 million for year 2005. Customerlinx has suffered a total of $14 million in losses over the past five years, from 2000 through 2004. The Kelly/RCA Contract accounts for 65% of Customerlinx' revenues, yet Kelly issued notices of termination of the RCA Contract in the 4th quarter of 2004, and is

suing Customerlinx to recover $2.6 million in overbillings. In addition, Customerlinx filed an admittedly false affidavit, attempting to deceive the Court by falsely stating that the Kelly litigation had been settled, and that Kelly's claim for the $2.6 million had been "foregone." When Customerlinx was confronted with an immediate discovery request for production of a settlement agreement, Customerlinx filed another affidavit within a matter of days, stating that there was not in fact any settlement agreement with Kelly, and that there merely had been some "preliminary negotiations."

Customerlinx' revenues from customers other than the Kelly/RCA Contract have declined precipitously from about $15.6 million in 2002 to about $5 million in 2004, to about $4.2 million (projected) for year 2005. Cert. Deacon, para.3-6, and exhibits referenced.

According to trial testimony, Customerlinx closed its Rhode Island office years ago. According to an affidavit just recently received from Customerlinx on June 13, 2005, Customerlinx has closed its California operations, and has just recently sold off its Connecticut operations in early March of 2005. Cert. Deacon, para.10.

Customerlinx in its recent production of bank statements and accompanying affidavit has finally admitted to its precarious financial position. Virtually all of Customerlinx' revenues are immediately used for payroll and other operating expenses. Although an average of approximately $1.1 million per month cycles through Customerlinx' bank accounts, the average balance is only around $100,000, not nearly enough to pay the judgment in the present case. Customerlinx admits that it lacks the liquidity to pay the judgment in this action, stating:

> "an attachment of bank accounts (which would prevent us from paying our employees and our operating expenses) or our accounts receivable (which would deny us the funds to pay our operating expenses) would render Customerlinx unable to transact business.

Also, Customerlinx' refusal to identify assets in defiance of a court order (i.e. identities of customers/accounts receivable for purposes of garnishment) is a factor strongly supporting injunctive relief freezing assets. Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878 (9th Cir. 2003).

As to #2, as held by the First Circuit in Teradyne, 797 F.2d at 53, the hardship to plaintiff of having a $350,000 judgment prove worthless far outweighs any hardship to defendant of having an equivalent amount of its assets tied up pending collection of judgment. In the present case, in contrast to Teradyne, the balance of hardship tips far more favorably to the plaintiff, because the trial is finished, judgment has entered for plaintiff, and there is no doubt about plaintiff in fact obtaining a judgment or the amount thereof.

For these reasons, plaintiff is entitled to temporary and preliminary injunctive relief in the form requested.

## II. Order For Registration of Amended Judgment in Other Districts

In addition, plaintiff has moved under 28 U.S.C.A. § 1963 for an order authorizing the amended judgment in this case to be registered in other district courts. As mentioned above, the statute provides that judgments are automatically registerable in other districts after appeal or after expiration of the appeal period. However, § 1963 also provides that a judgment may be registered in other districts

> "when ordered by the court that entered the judgment for good cause shown."

The nature of the required "good cause" showing is addressed in the commentary to the statute:

> "Good cause" [is satisfied by] a mere showing, for example, that the defendant has substantial property in other district and insufficient in the rendering district to satisfy the judgment. In an

> extensive review of § 1963 and its background, the court in Associated Business Telephone Systems Corp. v. Greater Capital Corp., 128 F.R.D. 63 (D.N.J., 1989), so holds: the presence of assets in some other district is indeed "good cause" for permitting registration. In Associated, in which New Jersey was the district of the judgment's rendition, the defendant had no assets in the state and, while appealing the judgment, did not file a bond under Rule 62(d) of the Federal Rules of Civil Procedure to stay the judgment's enforcement. The court pointed out that prior to the amendment of § 1963, the defendant would have had the best of two worlds during the appeal's pendency. Even without posting a bond, the defendant would have been subject to no enforcement of the judgment in the rendering district, for want of assets there, nor in any other district, assets there or not, because the pendency of the appeal in the home district was deemed to preclude registration anywhere else.
>
> Under the amendment of § 1963, the court holds, that no longer need happen. The defendant can no longer preclude foreign enforcement merely by appealing from the judgment. If no bond is filed to back the judgment while the appeal pends, the court can allow registration -- and let enforcement proceed--in a district in which the defendant does have assets. "Now," the court sum up, "§ 1963 and Fed.R.Civ.P. 62(d) operate in unity rather than inconsistently.

Also holding that "good cause" is shown by the absence of assets in the rending district are: Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp. 951 F.Supp. 51 (S.D.N.Y. 1997); Johns v. Roze, 143 F.R.D. 11 (D.D.C. 1992); Bechner v. Merrill Lynch, Pierce, Fenner & Smith, 809 F.Supp. 1259 (E.D. Mich. 1992), aff'd in part, rev'd in part 43 F.3d 1054, cert denied 516 U.S. 912, on remand 920 F.Supp. 1345. Schreiber v. Kellogg, 839 F.Supp. 1157 (E.D. Pa. 1993).

After diligent investigation, plaintiff has not been able to locate any assets of Customerlinx which are physically present in this district. Cert. Deacon. Although Customerlinx does its banking at Bank of America, none of the accounts are at Rhode Island branches, and thus the accounts probably would not be considered to be "present" in Rhode

Island for purposes of attachment. See, e.g., Therm X Chemical & Oil Co. v. Extebank, 444 N.Y.S. 2d 26, 27 (App. Div. 1981). In addition, with regard to customers who may be garnishees, as discussed above, those are not tangible assets, and their amenability to personal jurisdiction in Rhode Island may be disputed.

Therefore, plaintiff has amply shown good cause for immediate registration of the amended judgment in other districts, pursuant to 28 USCA § 1963.

AKHIL C. GUPTA,
By his attorney,

John D. Deacon, Jr. (#2226)
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195

**CERTIFICATION**

I hereby certify that on this 16 day of June, 2005, I caused to be served by email delivery via first class U.S. mail a copy of the within Memorandum in Support of Plaintiff's Emergency Motion for Temporary and Preliminary Injunction in Aid of Attachment on Trustee Process and for Authorization of Amended Judgment in Other Districts to attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**CERTIFICATION IN SUPPORT OF PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; AND FOR AUTHORIZATION FOR RECORDING JUDGMENT**

I, John D. Deacon, certify under penalty of perjury as follows:

1. I have represented the plaintiff on the claims in this action since September of 2002. I have personal knowledge of the following facts, except as otherwise stated.

2. According to testimony at trial, Customerlinx is on the accrual method of accounting, and therefore revenues are recorded for financial statement purposes shortly after invoices are issued.

3. According to plaintiff's trial exhibit ("Px") 8, Customerlinx' consolidated statement for year ending 12/31/02, its net sales for 2002 were $18,610,371. According to Px 29 and Px 55, slightly in excess of $3 million of Customerlinx' year 2002 revenues were on account of the RCA Contract. Therefore, for year 2002, Customerlinx had revenues of approximately $15.6 million from customers other than the RCA Contract.

4. For year 2003, according to Customerlinx' consolidated financial statement for that year (which it filed in May 2004 in opposition to plaintiff's motion for attachment, and a copy of which is attached hereto, tab 1), Customerlinx' net sales were $20,243,679. According to Px55, the Kelly document production and summary, for year 2003 Customerlinx invoiced a

total of slightly more than $6,670,000 on the RCA Contract. Therefore, for year 2003, Customerlinx had revenues of approximately $13.6 million from customers other than the RCA Contract, a decline of about $2 million from the previous year.

5. For year 2004, according to Customerlinx' Forecast/Plan for that year dated 5/17/04 (which it filed in May 2004 in opposition to plaintiff's motion for attachment, and a copy of which is attached hereto (tab 2), Customerlinx' forecasted sales were $11,488,647. Actual sales for 2004 are unknown. According to trial testimony, the RCA Contract was projected to provide annual sales of about $6.5 million, and invoices produced by Kelly confirm that projection. Therefore, for year 2004, Customerlinx would have had sales of approximately $5 million from customers other than the RCA Contract.

6. For year 2005, according to Customerlinx' forecast/plan for that year (tab 3), it forecast sales of $10,776,017. Subtracting the annual projected sales of $6.5 million on the RCA Contract results in projected sales of approximately $4.2 million from other customers.

7. According to trial exhibits and to the above-cited financial statements and forecasts, Customerlinx' negative cash flow and operating losses for the past five years are as follows:

| | | |
|---|---|---|
| 2000 | $4.1 million cash loss | (Px 5) |
| 2001 | $2.9 million cash loss | (Px 7) |
| 2002 | $4.7 million cash loss | (Px 8) |
| 2003 | $1.6 million cash loss | (tab 1) |
| 2004 | $775,000 actual loss through first two quarters (for 3rd and 4th quarters, actual numbers not available). (tab 2) | |

8. Attached hereto under tab 4 is a true copy of the response and production by Kelly Management Services, Inc. to a subpoena for documents which I issued and caused to be served subsequent to trial. The response is dated May 25, 2005.

9. One of the plaintiff's claims against Customerlinx that has been pursued since September of 2002 was for reimbursement of expense accounts and accrued but unused vacation time, in the aggregate amount of $10,695.26. Shortly before trial, on March 2, 2005, Customerlinx sent a check in that amount to the plaintiff. After the check was presented for deposit, it was returned for insufficient funds. After vigorous complaint, Customerlinx subsequently wired replacement funds.

10. According to trial testimony, Customerlinx closed its Rhode Island office years ago. According to an affidavit just recently received from Customerlinx on June 13, 2005, Customerlinx has closed its California operations, and has just recently sold off its Connecticut operations in early March of 2005.

11. After diligent investigation, we believe that Customerlinx has no assets physically present in Rhode Island.

Signed under penalty of perjury.

6/16/05

John D. Deacon

**CERTIFICATION**

I hereby certify that on this 16 day of June, 2005, I caused to be served by via first class U.S. mail a copy of the within Certification in Support of Plaintiff's Emergency Motion for Temporary and Preliminary Injunction in Aid of Attachment on Trustee Process and for Authorization of Amended Judgment in Other Districts to attorney Michael Farley, Morrison Mahoney & Miller, One Providence Washington Plaza, Providence, R.I. 02903.