UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AKHIL C. GUPTA,
Plaintiff,

v. C.A. No. 03-587 S

CUSTOMERLINX CORPORATION,
Defendant.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTION IN AID OF ATTACHMENT ON TRUSTEE PROCESS, AND FOR AUTHORIZATION FOR RECORDING OF AMENDED JUDGMENT IN OTHER DISTRICTS**

The defendant, Customerlinx Corporation offers the following opposition to the plaintiff's motion for a temporary restraining order and preliminary injunction in aid of attachment on trustee process. A memorandum of fact and law in support of the opposition is attached.

Wherefore, the defendant, Customerlinx Corporation offers a limited opposition to the plaintiff's motion for a temporary restraining order and preliminary injunction in aid of attachment on trustee process.

CUSTOMERLINX CORPORATION
By its attorneys,

Lee Stephen MacPhee (admitted pro hac vice)
Michael T. Farley, #6196
Morrison Mahoney LLP
121 South Main Street
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420

**CERTIFICATION**

I hereby certify that on this 21st day of June 2005, I caused to be served by First Class U.S. Mail, postage prepaid, a copy of the within document to:

John D. Deacon, Jr. , Esquire
72 Pine Street
Providence, RI 02903

Katy N Burdugo

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| AKHIL C. GUPTA,<br>Plaintiff, | : | |
| v. | : | C.A. No. 03-587 S |
| CUSTOMERLINX CORPORATION,<br>Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTION IN AID OF ATTACHMENT ON TRUSTEE PROCESS, AND FOR AUTHORIZATION FOR RECORDING OF AMENDED JUDGMENT IN OTHER DISTRICTS**

The defendant, Customerlinx Corporation offers the following opposition to the plaintiff's motion for a temporary restraining order and preliminary injunction in aid of attachment on trustee process.

Summary of Opposition

The plaintiff's Motion should be denied because it is ill-motivated and over-reaching. Plainittf seeks to attach personal property and deny access to revenue not only of the defendant, but also of five of its subsidiaries against whom no litigation has been filed nor judgment rendered. Second, the plaintiff has now demonstrated what the defendant has always contended and the plaintiff has denied: that Customerlinx Corporation has operated its business in the usual course during this litigation, even after judgment against it had entered. Baseless accusations to the contrary, Customerlinx has made no transfers, hidden no funds nor conducted its business in any way other than the routine. Plaintiff's protestations merely serve to demonstrate that he is at no more risk of irreparable harm than at any other time during the entire pendency of this litigation. Last, were the Court to enter the relief sought by the plaintiff, the effect would be to

"kill the golden goose" to the detriment of both parties. Instead of enhancing the plaintiff's ability to collect on a judgment (should the case survive the post-trial motion and, if necessary, appeal) the order will serve only drive the defendant out of business and destroy any hope of generating sufficient assets to meet a judgment in any amount.

In an effort to continue to demonstrate its good faith, the defendant offers to stipulate to the following, **but only in exchange** for the plaintiff's withdrawal of this motion and all written discovery requests served post-judgment, and agreement to conduct no further post-judgment discovery or motion practice:

> 1. except in the ordinary course of business, the defendant will transfer no asset, including, but not limited to, cash, property (real or personal), stock in any corporation, or any other tangible asset, until such time as the judgment is vacated or satisfied or until such time as the following provision is satisfied.
>
> 2. upon receipt of monies generated by a capital call from the limited partners of 5 Paces Ventures, LLP, owner of the defendant's stock, the defendant will establish an escrow account of $350,000.00, under such terms and conditions as the court may determine until such time as the judgment is vacated or satisfied.

The defendant can agree to do no more.

## Argument

### 1. Plaintiff has no legal right to act against corporate entities against whom he has no judgment.

While the defendant does not concede that the plaintiff demonstrated that the court has the authority to enter the extraordinary relief sought, one glaring misrepresentation outshines all others. The defendant has demonstrated that it has but one bank account, an account with Bank of America, #9472978788, yet the plaintiff seeks to have the court act against five additional accounts, none of which are the property of the defendant Customerlinx Corporation.

In an attempt to ensure the Court that despite the groundless accusations to the contrary, it has "come clean," the defendant has produced bank statements not only of Customerlinx Corporation, but also of all its wholly-owned subsidiaries, Customerlinx of Oklahoma, Inc., Customerlinx of New York, Inc., Customerlinx of North Carolina, Inc., Customerlinx of Connecticut, Inc. and Customerlinx of California, Inc. Plaintiff would have the court ignore that fact that each is a distinct Delaware corporation and that none have ever been litigants in the court. No judgment has entered against any corporate entity but the one with whom the plaintiff was employed, Customerlinx Corporation.

Plaintiff cites no authority upon which the court might reasonable ignore the independent status of each subsidiary. Federal law favors recognizing corporate separateness. It may be that for certain purposes a parent and subsidiary may be treated as separate entities and yet a court would be justified in looking behind the corporate set up to determine whether for the purpose of administering and enforcing a statute involving a public purpose, it is necessary to treat both the corporation and the subsidiary as one. But even in such cases, the courts are hesitant to destroy the corporate separateness of the parent and subsidiary when there is no evidence of evasion or where it is clear that both the parent and subsidiary have a legitimate separate existence. Press Co., Inc., v. National Labor Relations Board, 73 App.D.C. 103; 118 F.2d 937, certiorari denied 313 U.S. 595; 61 S.Ct. 1118, 85 L.Ed. 1548 (1940); Gerdert et al. v. Certified Poultry & Egg Co., 38 F.Supp. 964 (D.C. ).

Rhode Island law also favors recognizing corporate separateness. The Rhode Island Supreme Court held, in Miller v. Dixon Industries, 513 A.2d 597 (R.I. 1986), that the rule is to observe separate corporate identities. "Absent proof that a parent company dominated the finances, policies, and practices of its subsidiary, courts will generally respect the independent

character of each corporation." Parrillo v. Giroux, 426 A.2d 1313 (R.I. 1981); see also Lily Truck Leasing Corp. v. Clark, 556 A.2d 565, 567 (R.I. 1989). Lennon v. Dacomed Corp., CCH Prod. Liab. Rep. P16, 572; 2003 R.I. Super. LEXIS 48 (McGuirl, J. 2003)

Although the criteria for piercing the corporate veil of limited liability vary with the particular circumstances of each case, *see* Miller v. Dixon Industries Corp., 513 A.2d 597, 604 (R.I. 1986), one overriding factor is omnipresent: "the corporate entity should be disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity." R & B Electric Co. v. AMCO Construction Co., 471 A.2d 1351, 1354 (R.I. 1984); Vennerbeck & Clase Co., 53 R.I. at 138-39, 164 A. at 510.

Such facts may be present, for example, "when the corporate entity 'is used to defeat public convenience, justify wrong, protect fraud, or defend crime.'" R & B Electric Co., 471 A.2d at 1354 (quoting Vennerbeck & Clase Co., 53 R.I. at 139, 164 A. at 510-11); *see also* United Transit Co. v. Nunes, 99 R.I. 501, 508, 209 A.2d 215, 219 (1965). Doe v. Gelineau, 732 A.2d 43, 48-49 (R.I.1999).

On the other hand, when two corporations are connected through common-stock ownership, we will respect the separateness of each entity "unless the totality of circumstances surrounding their relationship indicates that one of the corporations 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct [of the other]." Vucci v. Meyers Brothers Parking System, Inc., 494 A.2d 530, 536 (R.I. 1985) (quoting United Transit Co., 99 R.I. at 508-09, 209 A.2d at 219); see also 1 Fletcher, Cyclopedia of the Law of Private Corporations § 43 at 719 (rev. ed. 1999)). Doe v. Gelineau, 732 A.2d 43, 48-49 (R.I.1999).

The burden of proof in corporate-veil-piercing cases rests upon the party asking the court to disregard the corporate entity and impose liability on some other party. *See generally* 1 Fletcher, § 41.28 at 608-16 (discussing the burden of proof in these types of cases and noting that the burden usually rests upon the plaintiff to establish a basis for disregarding a corporation's separate legal identity). Doe v. Gelineau, 732 A.2d 43, 48-49 (R.I.1999). See also Parrillo v. Giroux Co., 426 A.2d 1313, 1321 (R.I. 1981).

Plaintiff's Motion is a classic attempt at mis-direction. While it focuses on the court's authority to act against the defendant's assets outside its geographical jurisdiction, it completely ignores the more glaring and basic legal issue: the court is asked to act against entities against which no judgment has entered and over which it has no legal jurisdiction.

2. Plaintiff has failed to demonstrate irreparable harm.

The plaintiff cites Teradyne as the legal standard to be applied:

> The court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. The decision to grant or deny a preliminary injunction is a matter for the discretion of the district court and is reversible only for an abuse of discretion. Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986)

However, while plaintiff focuses on required findings (3) and (4), he blithely ignores findings (1) and (2) because they are fatal to his request.

Plaintiff has completely failed to demonstrate irreparable injury if the injunction is not granted. Contrary to plaintiffs allegations and accusations, the defendant has operated in the normal course of business both prior to and subsequent to entry of judgment against it. Plaintiff's frantic discovery efforts have yielded but one indisputable fact: Customerlinx's business progress has been constant. Month to month, its assets, while limited, are constant.

Money has flowed in and out of Customerlinx bank account on a steady, regular, routine, basis. There is no indication that the defendant has taken any action to shield or shelter assets. Plaintiff stands no lesser chance of collecting on his judgment today than he did six months ago. In fact, it can be argued that he is in a more secure position.

Even if the plaintiff could demonstrate an injury (and he cannot) he has utterly failed to prove that such injury outweighs any harm which granting injunctive relief would inflict on the defendant. To the contrary, the plaintiff has stated the defendant's case:

> "Virtually all of Customerlinx' revenues are immediately used for payroll and other operating expenses. Although an average of approximately $1.1 million per month cycles through Customerlinx' bank accounts, the average balance is only around $100,000, not nearly enough to pay the judgment in the present case. Customerlinx admits that it lacks the liquidity to pay the judgment in this action, stating:
>
> > "an attachment of bank accounts (which would prevent us from paying our employees and our operating expenses) or our accounts receivable (which would deny us the funds to pay our operating expenses) would render Customerlinx unable to transact business. *Plaintiff's Memorandum at Pg. 6*

What greater harm to a business then to be rendered unable to transact business? The plaintiff obviously seeks no compensatory damages, rather, his clear intention is to act punitively: to drive Customerlinx Corporation out of business before it post-trial motion and, if necessary, appeal, can be heard.

3. <u>The plaintiff's true purpose is to punish the defendant by putting it out of business.</u>

For whatever malicious and insincere reason, the plaintiff seeks to have the court "kill the golden goose" to the benefit of neither party. If the plaintiff obtains the relief requested, the defendant will be denied any cash with which to operate its business: it will have no access to

monies in it bank account nor will it have an source of revenue[1]. No business can survive under such circumstances. Instead of enhancing the plaintiff's ability to collect on a judgment (should the case survive the post-trial motion and, if necessary, appeal) the order will serve only frustrate the very purpose the plaintiff purportedly seeks to advance and drive the defendant out of business.

The plaintiff requests temporary and preliminary injunctive relief in the form of a "postjudgment limited freeze order as to certain of defendant's assets." In truth, however, the order requested is neither "limited" nor directed toward "certain" assets. In actuality, plaintiff seeks to completely encumber every aspect of the defendant's operation and finances. The motion asks "that defendant Customerlinx be temporarily and preliminarily restrained and enjoined from (1) receiving, accepting, or negotiating any payments from specified customers, (i) Financial Times Ltd., and (ii) the entities which are the customers on the "RCA Contract"---Kelly Services, Inc., Kelly Management Services, Inc. and Thomson Multimedia, Inc.; and/or (2) drawing from, transferring, and/or withdrawing funds from any bank accounts." Plaintiff has not demonstrated and cannot demonstrate that "such injury outweighs any harm which granting injunctive relief would inflict on the defendant." The plaintiff most assertive allegation is that he "may not" be able to take certain actions. However, the requested order would impose on the defendant a fatal injury: it simply could not operate without access to money. The plaintiff's pleadings disclose his true intention: not to secure his judgment, but instead to ruin his adversary.

---

[1] Plaintiff's advocacy has once again gotten ahead of him. He writes: "Also, Customerlinx' refusal to identify assets in defiance of a court order (i.e. identities of customers/accounts receivable for purposes of garnishment) is a factor strongly supporting injunctive relief freezing assets. Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878 (9th Cir. 2003)." However, no such order has entered. The plaintiff has deliberately sought to confuse discovery requests with court orders.

If the plaintiff's Motion were allowed, what then, would be achieved? Customerlinx Corporation and its five subsidiary corporations would be effectively enjoined from operating and the plaintiff might freeze assets representing a fraction of his judgment[2]. When, on post-trial motion or appeal, the judgment is reversed, the defendant's victory would be rendered hollow, having been forced to cease to operate months or years previously.

Conclusion

For the reasons stated above, the plaintiff's motion for a temporary restraining order and preliminary injunction in aid of attachment on trustee process should be **denied**.

CUSTOMERLINX CORPORATION
By its attorneys,

Lee Stephen MacPhee (admitted pro haec vice)
Michael T. Farley, #6196
Morrison Mahoney LLP
121 South Main Street
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420

[2] The parties have stipulated that as of June 3, 2005, the cumulative balance of the bank accounts of the defendant and its five subsidiary corporations was approximately $166,000.

**CERTIFICATION**

I hereby certify that on this 21st day of June 2005, I caused to be served by First Class U.S. Mail, postage prepaid, a copy of the within document to:

John D. Deacon, Jr. , Esquire
72 Pine Street
Providence, RI 02903

Katy NBerdugo